**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| GERALD M. KELLY, | |
| Plaintiff - Appellant, | No. 99-3132 |
| v. | (D. Kansas) |
| (NFN) SCOTT, Warden, Warden at USP Leavenworth; (NFN) MOORE, Correctional Officer at USP Leavenworth; (NFN) KEOHANE, Lt., USP Leavenworth; (NFN) SALAZAR, P.A. Prison Hospital, USP Leavenworth; (NFN) BERHANE, P.A., USP Leavenworth; (NFN) SMITH, Hospital Supervisor Administrator, USP Leavenworth; (NFN) JACKSON, Cpt., USP Leavenworth, in their individual and official capacities; (NFN) SCHRODER, C.O., | (D.C. No. CV-95-3101-RDR) |
| Defendants - Appellees. | |

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Gerald Kelly, a federal prisoner, brought this      Bivens [1] action against various corrections personnel at USP-Leavenworth, alleging excessive force, failure to keep him safe, and inadequate medical care, in violation of his rights under the Eighth Amendment.  The parties submitted affidavits, documents and motions, following which the district court granted summary judgment in favor of the defendants.  Mr. Kelly appeals that judgment and the district court's denial of his Fed. R. Civ. P. 59(e) motion for reconsideration, as well as asserting ten additional grounds for appeal (some overlapping).  For completeness, we reproduce all the issues raised by Mr. Kelly, as follows:

> 1.  Did the district court error by not Appointing Counsel and denying plaintiff Brief IN Support for Counsel?
>
> 2.  Did the district court error by denying Plaintiff motion for Summary Judgment?
>
> 3.  Did the district court error by denying plaintiff Response Motion to defendants motion to strike plaintiff motion for Summary Judgment?

---

[1]Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

4. Did the district court error by denying plaintiff extend time to respond to order of 4-1-96?

5. Did the district court error by denying plaintiff motion to Amend Complaint?

6. Did the district court error by denying plaintiff copies of proceeding, when plaintiff infromed the court of the lost and stolen property and documents to plaintiff case by the governments officers?

7. Did the district court error by denying plaintiff motion for Discovery?

8. Did the district court error by denying plaintiff case and not allowing plaintiff to a Jury Trail as requested by plaintiff and a Right to by Law?

9. Did the district court error by denying motion by plaintiff for Reconsideration?

10. Did district court error by judge ruling on own motion to remove his self from case of plaintiff Kelly?

11. Did district court error by ordering plaintiff to pay for filing an appeal, when plaintiff was Granted Leve to proceed In Forma Pauperis and well befor the amending and passing of the (P.L.R.A.) signed into law on 4-26-96. Plaintiff was granted Leve to proceed In Forma Pauperis, (3-15-95).

12. Did district court error by dismissing plaintiff case and telling plaintiff that the complaint should be filed under the Federal Tort Claim Act?

Appellant Br. at 3.

For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

Mr. Kelly's complaint names as defendants eight employees of the Federal Bureau of Prisons holding various positions at USP-Leavenworth at the time of the incidents in question. Throughout the record they are referred to by their last names and titles: Warden Scott, Senior Officer Specialist Schroeder, Correctional Officer Moore, Lieutenant Keohane, Physician's Assistants Salazar and Berhane, Health Services Administrator Smith, and Captain Jackson.

Kelly is serving a thirteen year and one month sentence for armed bank robbery. There is no significant dispute regarding the following core facts.

At about 10:00 p.m. on April 24, 1994, Officers Moore and Schroeder, during the course of conducting the 10:00 p.m. institution count on Range "A" of the Special Housing Unit (SHU), approached Kelly's cell, A-107. For reasons that are in dispute, Schroeder hit the cell window with his flashlight with enough force to crack the glass. The window is five inches high, eighteen inches wide and, according to Kelly, one inch thick.

During the same night, Kelly complained that a shard of glass was lodged in his right eye. Accordingly, staff working in the SHU telephoned the Health Services Unit and, at 3:45 a.m., PA Salazar responded. Kelly, contrary to regulations, then refused to have his hands handcuffed behind him in order to allow Salazar to examine his eye. There is no dispute as to the refusal, although different explanations are offered. In any event, due to Kelly's refusal to be

handcuffed, no examination was conducted. A few hours later, still on the morning of the 25th, Kelly, apparently more cooperative, allowed PA Berhane to take him to the emergency room where Berhane examined his eye, could not detect any foreign objects, and prescribed triple antibiotic ointment.

Three days later, on April 28, PA Berhane saw and examined Kelly for a complaint of irregular bowel movement, and prescribed Metamucil. Kelly's medical records do not list any eye complaint on that visit, and Berhane's affidavit states that Kelly raised no concerns regarding his right eye and that he did not detect any irregularities. Kelly asserts in his complaint that he did raise concerns about his eye.

The next day, April 29, when Kelly again complained of glass causing pain in his right eye, he was taken to the prison hospital where PA Navarro (not a defendant in this suit) examined him. Navarro found and removed a piece of glass, irrigated Kelly's eye with saline solution, and prescribed artificial tears. Kelly asserts he has suffered a 25 percent loss of vision in his right eye as a result of the incident—a claim disputed in the record.

On April 25, 1994, Mr. Kelly wrote to Warden Scott complaining that officers had targeted him for harassment and, in the latest incident, Officer Schroeder had abused him by hitting the glass in his cell door, breaking the glass, causing some glass to lodge in his eye. The letter then states that when Kelly

asked a staff member to call the physician's assistant, he refused. Kelly also alleges in his complaint that he orally advised Warden Scott of the problems and that Scott failed to act.

On the same date, the 25th, Kelly sent a letter to Captain Jackson similar to the one sent to Warden Scott. Kelly alleges that Jackson failed to act. In his complaint, Kelly also alleges that he repeatedly informed Lt. Keohane of the situation; and in addition, that Administrator Smith, as the person in charge of the prison hospital, knew or should have known Kelly was complaining of an eye injury that was not being adequately treated, and that Smith failed to properly train and supervise the medical staff.

More generally, Kelly contends in his complaint that Warden Scott and Captain Jackson failed their supervisory duty to protect inmates, specifically Kelly, from abuse by guards. He also alleges a failure to train.

## DISCUSSION

### A.

We review a grant of summary judgment de novo, using the same standards employed by the district court. Specifically, construing disputed facts in favor of the non-moving party, we must determine if there is a genuine dispute as to material facts. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc. , 477 U.S.

242, 248 (1986).  And, if not, whether the defendants are entitled to judgment under the applicable law.    See Liberty Lobby , 477 U.S. at 250.  Since the defendants raised the defense of qualified immunity, and the district court alternatively granted relief on that ground, we also follow a two-step process which requires us first to determine whether there is any genuine issue as to the existence of a constitutional claim.    See County of Sacramento v. Lewis  , 523 U.S.833, ___ n.4, 118 S. Ct. 1708, 1713 n.4 (1998);    Siegert v. Giley , 500 U.S. 226, 232 (1991).

Kelly's Eighth Amendment claims fall under two standards.  As to his intentional use of force claim against Schroeder, which he extends to the accompanying officer, Moore (for failing to restrain Schroeder), Kelly must make a colorable showing that these officers applied force "maliciously and sadistically for the very purpose of causing harm,"    Hudson v. McMillian  , 503 U.S. 1, 2 (1992).  This is a standard of purposeful and knowing conduct which is inconsistent with the undisputed facts.  No force at all was applied directly to Kelly.  This is a cause and effect allegation.  It is unsupported by even a conclusory claim that based on experience with glass in cell doors, these officers thought they could and wanted to injure Kelly with flying glass by hitting a 5"x18"x1" thick security window with a flashlight.  Such windows, after all, are obviously constructed to prevent breakage by prisoners, and any history of

breakage would, for equally obvious reasons, be speedily remedied. Nor is there anything in the record showing any such conduct by Schroeder or Moore, which, in any event, would be unlikely given the fact that the officers would have to answer to their superiors for the expense and problems created by breaking cell door windows.

The second and more applicable standard is deliberate indifference. Prison officials violate an inmate's Eighth Amendment right to be free of "cruel and unusual punishments" when they are deliberately indifferent to the inmate's serious medical needs, see Estelle v. Gamble, 429 U.S. 97 (1976), or to a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825 (1994); Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Hudson v. Palmer, 468 U.S. 517 (1984).

Deliberate indifference has both objective and subjective components. The latter requires a culpable state of mind. That is "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837 (emphasis added). Mere negligence (which, by definition, is unreasonable conduct) does not constitute deliberate indifference. See id. at 835. Thus, medical malpractice does not either. See Estelle v. Gamble, 429 U.S. at 106; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).

At most, Mr. Kelly's medical treatment claims fall within the negligence or malpractice category. He acknowledges that physician's assistants attended or attempted to attend to him four times in five days, beginning with a visit (which Kelly frustrated) in the middle of the night when Kelly complained following the incident in question. A second visit and an examination in the emergency room followed a few hours later. Two days later Kelly was seen again. Although he disputes the PA's version as to the absence of eye complaints, he complained about something—constipation—and he was seen when he complained. The next day Kelly complained again, and was seen again by a physician's assistant who, on this occasion, discovered the glass and removed it.

There is no genuine dispute whether Kelly was denied treatment. He was not. His argument is that he needed more treatment. But the bulk of the claims go to the effectiveness and competence of the treatment given. However, nothing establishes a genuine factual issue as to whether Berhane drew the inference that Kelly had glass in his eye and disregarded that risk. He looked for glass and could not see any, so he prescribed an ointment for the redness and irritation. PA Navarro's more competent examination hardly shows that Berhane had a culpable state of mind.

It follows that no genuine issue exists as to whether or not the other defendants had a culpable state of mind, i.e., were deliberately indifferent, with respect to Kelly's medical needs. He was accorded treatment.

Likewise, Kelly fails to establish a triable issue as to any defendant with respect to deliberate indifference to his safety. The reasons set out above, relating to Schroeder's hitting the window with his flashlight, apply here as well. There is no record of guards breaking cell windows hoping flying glass will injure prisoners, or vice versa. No defendant can be deliberately indifferent to an unknown risk.

Finally, Kelly's allegations against the defendants in their official, as well as their individual, capacities, are suits against the United States and barred by sovereign immunity. The only applicable exception is a suit under the Federal Tort Claims Act, 29 U.S.C. §§ 1346(b), 2671, et seq., which is neither pled nor satisfied as to its requirements here.

We review the district court's denial of Kelly's motions to amend the complaint, for the appointment of counsel, for discovery, and for recusal, only for abuse of discretion. After carefully reviewing the file, we find no abuse for the reasons—which we adopt—stated in the district court's orders filed May 18, 1995, and February 20, 1996, its memorandum and order filed February 29, 1998, and its order dated March 29, 1999. Mr. Kelly has also advanced certain

arguments which were not raised below and which, accordingly, we do not consider. See Swanson v. Guthrie Indep. Sch. Dist. No. 1-L, 135 F.3d 694, 702 (10th Cir. 1998). Additionally, he has attempted to pursue claims raised in the amended complaint which the district court did not allow to be filed. Since we have upheld that ruling, we do not consider the amended complaint.

**B.**

On April 22, 1999, the district court filed an order granting Mr. Kelly's motion for leave to proceed in forma pauperis on appeal on the condition that he make installment payments of the filing fee as required by 28 U.S.C. § 1915(b). That requirement was imposed by Congress in the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915.

Mr. Kelly contends that the district court erred by imposing an appellate filing fee obligation pursuant to this statute because the complaint in this case was filed and leave to proceed in forma pauperis in the district court was granted before the PLRA was enacted. We considered and rejected an identical argument in Shabazz v. Parsons, et al., 127 F.3d 1246, 1247 (10th Cir. 1997). See also, Schlicher v. Thomas, 111 F.3d 777, 779 n.1 (10th Cir. 1997) (prisoner proceeding in forma pauperis on appeal who files his notice of appeal after the PLRA

enactment date "is required to comply with the filing fee requirements of § 1915(b), as amended by the PLRA.").

## CONCLUSION

After thoroughly reviewing the record and considering Mr. Kelly's arguments, we conclude that the district court did not err, and the judgment is AFFIRMED.

Mr. Kelly remains obligated to pay installments on the appellate filing fee as previously ordered.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge